1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

6    JACOB ANDREW JOHNSTON,

7                        Plaintiff,

8         v.

9    WAYLON HOWARD, et al.,

10                       Defendants.

Case No. 3:22-cv-5089-TL-TLF

REPORT AND
RECOMMENDATION

Noted for June 2, 2023

11         This matter is before the Court on Defendants' motion for summary judgment

12    (Dkt. 52) and motions to strike (Dkts. 65, 72). Plaintiff Jacob Andrew Johnston is a state

13    prisoner currently confined at Monroe Correctional Complex[1] who is proceeding *pro se*

14    and *in forma pauperis. See* Dkts. 4, 5, 7. He brought this suit under 42 U.S.C. § 1983

15    alleging that Defendants used excessive force against him in violation of his Eighth

16    Amendment rights. Dkt. 5. This matter has been referred to the undersigned Magistrate

17    Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. §

18    636(b)(1)(B); Local Rule MJR 4(a)(4).

19         Having considered the pending motions, the documents filed in support and in

20    opposition, and the remainder of the record, the Court recommends that Defendants'

21    motion to strike (Dkt. 72) be GRANTED and Defendants' motion for summary judgment

22

23    _____

24    [1] Plaintiff has informed the Court that he will soon be transferred to Washington State Penitentiary in
Walla Walla, Washington. Dkt. 74.

25

REPORT AND RECOMMENDATION - 1

(Dkt. 52) be DENIED for the reasons set forth below. The undersigned further recommends that the Court reconsider and GRANT Plaintiff's motion for appointment of counsel (Dkt. 15).

BACKGROUND

A. Procedural History

Plaintiff initiated this action on February 14, 2022. Dkt. 1. On September 22, 2022, he moved for voluntary dismissal of this case. Dkt. 46. Defendants raised no objection, and the undersigned recommended that Plaintiff's motion be granted and the case be dismissed without prejudice. Dkts. 47, 48. Plaintiff then filed two objections to the Report and Recommendation indicating that he no longer wished for the case to be dismissed. *See* Dkts. 49, 50.

Defendants did not specifically respond to Plaintiff's objections, but, on November 14, 2022, they filed a motion for summary judgment (Dkt. 52), with supporting declarations of defense counsel Matthew Heintz (Dkt. 53),[2] Defendant Eric Wulf (Dkt. 54), Defendant Waylon Howard (Dkt. 55), Crystal Jennings (Dkt. 56), Wade Rada (Dkt. 57), Patrick McPherson (Dkt. 58), and Vincent Darian (Dkt. 59). The motion was originally noted for December 9, 2022. Dkt. 52. Plaintiff filed a response opposing summary judgment on November 22, 2022, then filed a second response a week later. Dkts. 60, 61. On December 5, 2022, the Court renoted the summary judgment motion

---

[2] Defendants filed a praecipe to this document on December 1, 2022, requesting that the Court accept a supplementary declaration of counsel that included as an exhibit the court reporter's certification from Plaintiff's deposition, portions of which had been attached as an exhibit to counsel's original declaration. Dkts. 62, 63.

for consideration on January 6, 2023. Dkt. 64. Defendants filed a reply, which included a motion to strike portions of Plaintiff's response. Dkt. 65.

On December 14, 2022, the Court declined to adopt the Report and Recommendation to dismiss in light of Plaintiff's objections and referred the case back to the undersigned Magistrate Judge. Dkt. 66. Plaintiff then filed another response objecting to summary judgment, which appeared to be identical to his first response. *See* Dkts. 60, 67.

On January 9, 2023, Plaintiff filed a request for an extension of time to gather evidence that he contended would show he was deprived of meals and explain the confrontation with Defendants. Dkt. 68. Defendants opposed the extension, arguing that Plaintiff had failed to act with diligence during discovery and the additional information that he sought would not affect summary judgment proceedings. Dkt. 69. On January 11, 2023, the Court renoted the motion for summary judgment to January 27, 2023. Dkt. 70. On February 8, 2023, Plaintiff filed a supplemental response to the motion for summary judgment and attached his daily segregation report for the period of December 1 to December 5, 2021. Dkt. 71. Defendants moved to strike this filing, arguing that it is an unauthorized surreply in violation of LCR 7(g), as well as irrelevant and untimely. Dkt. 72.

B.  Undisputed Facts

The parties do not dispute the general background facts of this case. On December 5, 2021, Defendants were working as corrections officers in the Intensive Management Unit (IMU) at Washington Corrections Center in Shelton, Washington, where Plaintiff was housed at the time. Dkts. 5 at 3; 53, Ex. A at 8; 54 at 1; 55 at 1-2.

Plaintiff had reported thoughts of self-harm that day. Dkts. 53, Ex. A at 10,13; 54 at 1-2; 55 at 2. Defendants were escorting Plaintiff from his cell when Plaintiff struck Defendant Howard with his head. Dkts. 5 at 3; 53, Ex. A at 16; 54 at 2; 55 at 2. It is undisputed that Defendants used force to subdue Plaintiff in response to this assault, but the parties present differing accounts of the force used during the incident.

### C. Plaintiff's Allegations

Plaintiff's operative complaint[3] alleges that, at the time of the incident, he was upset because the IMU staff had not fed him for 24 hours. Dkt. 5 at 3. Plaintiff states that he "attempted or did" lunge at Defendant Howard and headbutted him. *Id*. Defendant Howard jumped back and yelled, "you want to hit me with your head mother f -- --." *Id*. Plaintiff claims that he pushed Defendant Howard but did not attempt "further assaultive behavior." *Id*. Plaintiff alleges that Defendant Howard then punched him in the face, and he fell to the ground. *Id*. He believes Defendant Howard proceeded to punch him while he was on the ground but his "mind is [foggy]" since the incident. *Id*. After Plaintiff fell on his back, he alleges that Defendant Wulf placed his knee on Plaintiff's "head or neck for multiple moments," choking him and almost crushing his skull. *Id*. Plaintiff thought he was going to die during the ordeal. *Id*. He contends that he suffered a bloody nose as well as welts on his head, face, and knees. *Id*.

The summary judgment record includes portions of the transcript from Plaintiff's deposition, which was taken on August 29, 2022. Dkt. 53, Ex. A at 1, 5-35; *see also* Dkt. 63, Ex. A, at 1. In his sworn deposition testimony, Plaintiff stated that he had not been fed for more than 30 hours at the time of the incident, which caused him to feel suicidal

---

[3] *See* Dkt. 29.

and angry. Dkt. 53, Ex. A at 10. Plaintiff asserted that he got up for breakfast on the morning of December 5, 2021 and went to stand on the "line that every inmate has to be on to be fed." *Id*. at 13. Defendant Howard walked by and taunted him about not being fed, saying something like, "you think you are going to be fed? I'm not feeding you shit." *Id*. at 12-13. Defendant Wulf was present when Defendant Howard made this comment. *Id*. at 12.

Plaintiff asserted that he felt suicidal and "mad enough to become assaultive." *Id*. at 13. He told corrections staff that he was feeling suicidal, knowing that he would be put in the observation unit. *Id*. at 13-14. He wanted to go to the observation unit because "there I don't get harassed. They don't lecture me. They don't—they bring me out the food. They bring me food. They bring me to the shower, everything. It doesn't matter what I do." *Id*. at 14. Plaintiff knew that Defendants Howard and Wulf would likely be the officers who would transport him out of the cell. *Id*. at 15. He stated that he "did kind of hope it was them" because "those were the officers that were harassing me," but then he said, "[e]very single CO harasses me, so it doesn't matter if it's that two or this two or him or her, they all done it." *Id*.

When Defendants came to Plaintiff's cell for the transport, Defendant Wulf ordered him to strip down, which he initially refused to do because he thought it was unusual. *Id*. at 16. Plaintiff then took everything but his boxers off and walked out of the cell. *Id*. Defendant Howard was on Plaintiff's right arm, and Plaintiff "tried to lunge at him and I think I contacted his, I don't know, his chin or his head or his jaw due to aggression, due to me being very upset, you know. I just wanted them to stop harassing

me." *Id*. Plaintiff stated that he head-butted Defendant Howard once and pushed him but then "stopped attempting to assault him." *Id*. at 17, 34-35.

After this, Plaintiff explained, Defendant Howard "jumped back and he said, Hey you want to hit me mother f-- --? And then he started socking me in my face multiple times, like ten times at least." *Id*. at 16. Plaintiff then clarified that Defendant Howard punched him "at least five to ten times, approximately" while Plaintiff was standing. *Id*. at 18-19. Plaintiff was "stunned" and fell backwards to the ground. *Id*. at 16. He later stated that Defendant Howard might also have punched him about three times while he was on the ground, but he was not certain. *Id*. at 22-23. He also was unsure whether he pushed Defendant Howard before or after the Defendant started punching him. *Id*. at 34-35.

Plaintiff stated that Defendant Wulf then "got on my neck with his knee and stayed on my neck for like 30 seconds until the other COs came[.]" *Id*. at 16. At his deposition, Plaintiff was not sure of his position on the ground when Defendant Wulf's knee was on his neck, saying that it was "kind of foggy to me if I was on my back or on my front." *Id*. at 21. Plaintiff asserted that he is 150 pounds, while Defendant Wulf is 200 pounds. *Id*. at 24. Plaintiff explained, "I thought I was going to die. I was thinking about George Floyd and all those African Americans that died from the knee on the neck. I thought I was going to die. . . . That's what I remember." *Id*. at 18.

He was unsure how much time elapsed from when he head-butted Defendant Howard to when the other officers arrived but guessed that "it was probably 30 or 45 seconds until they showed up, if not a little bit longer." *Id*. at 22. When the other officers arrived, he was pretty sure that Defendant Wulf was still on his neck, but Defendant Howard had stopped punching him by that time. *Id*. at 22-23. After Defendant Wulf

1   moved his knee, Plaintiff spit and the officers put a spit hood over his head. *Id*. at 16-18.

2   Plaintiff specified in his deposition that his claim against Defendant Wulf related

3   specifically to the Defendant putting his knee on Plaintiff's neck, while his claim against

4   Defendant Howard was based on the punches. *Id*. at 24.

5       Plaintiff states that he had welts, a bloody nose, and scratches around his wrists

6   from the handcuffs after the incident. *Id*. at 16-17, 25-26. He reported to medical staff

7   that he had pain and bruising on the side of his face, back, knees, and wrists. *Id*. at 26-

8   27. On a scale of one to ten, he reported pain at a level three that lasted "a couple

9   days." *Id*. at 27. He had a bump on the back of his head, along with bruising on his face

10  that lasted "a couple weeks." *Id*. After the first visit with medical staff the day of the

11  incident, he did not have any follow-up treatment for his physical injuries. *Id*. at 28-29.

12      Plaintiff also asserted that he had suffered emotional and psychological injury

13  from the incident:

14      I'm traumatized. Yeah, they jumped me. And when you see Rodney King
        and you see, you know, George Floyd and you see all of the others who
15      have been beat up, and I'm African American and they are not, I'm
        traumatized by it. It was over race probably. It was—it was traumatizing,
16      yeah. Yeah, how can I look at my child knowing that I got beat up by some
        COs in prison, you know. That's messed up.

17
18  *Id*. at 30. Plaintiff had a mental health visit in prison shortly before his deposition but had

19  not previously sought mental health care related to the incident. *Id*. at 30-32. He

20  explained that he was reluctant to see mental health care "unless I really, really need it."

21  *Id*. at 31. He reported that he had discussed the incident with his mental health provider

22  but that the visit was "just general" rather than specifically related to the incident. *Id*. at

23  32-33.

24

25

1

2    D.  Declaration of Defendant Howard

3        Defendant Howard states that Plaintiff had not complied with "the procedures

4    necessary to receive breakfast" on the morning of December 5, 2021. Dkt. 55 at 2.

5    Around 11:00 a.m., he was notified that Plaintiff had reported thoughts of self-harm and

6    began the process of transporting Plaintiff to an observation cell. *Id*. Plaintiff was initially

7    compliant when Defendants applied wrist restraints. *Id*. Defendant Howard placed his

8    left hand on Plaintiff's right bicep to escorted Plaintiff out of his cell. *Id*. Plaintiff took a

9    couple of steps out of his cell, then turned suddenly toward Defendant Howard and

10   head-butted him in the upper left part of his face. *Id*. After the first strike, Plaintiff

11   continued to lunge toward him head-first, and it appeared that Plaintiff was attempting to

12   head-butt him again. *Id*. Defendant Howard used his forearm to push Plaintiff's head

13   against the wall, but states that he did not strike Plaintiff with his forearm. *Id*. at 2-3.

14   Defendants brought Plaintiff to the ground. *Id*. at 3. Defendant Howard was attempting

15   to control Plaintiff's upper body while Defendant Wulf was attempting to control

16   Plaintiff's lower body. *Id*. Once they had gotten Plaintiff face-down on the ground,

17   Defendant Howard had his left hand on Plaintiff's left shoulder and his right knee on the

18   center of Plaintiff's right shoulder blade. *Id*.

19       Plaintiff continued to struggle while he was on the ground, throwing his head

20   backwards toward Defendant Howard twice more while also trying to spit at him. *Id*.

21   Defendant Howard retrieved a spit hood from his pocket and placed it over Plaintiff's

22   head. *Id*. Defendant Wulf called out over the radio about the incident shortly after they

23   fell to the ground, and additional officers arrived about a minute after Plaintiff initially

24   head-butted him. *Id*. Defendant Howard avers that he did not punch or strike Plaintiff at

25

REPORT AND RECOMMENDATION - 8

any point during this incident, nor did he put any body weight on Plaintiff's neck. *Id*. Defendant Howard states that he did not jump back or yell anything at Plaintiff after he was head-butted. *Id*.

    E.  <u>Declaration of Defendant Wulf</u>

       According to Defendant Wulf's declaration in support of summary judgment, he and Defendant Howard went to Plaintiff's cell to transport him to a holding cell so that he could be seen by mental health staff because Plaintiff had reported thoughts of self-harm. Dkt. 54 at 1-2. Plaintiff initially complied with search and transport procedures and allowed Defendants to place him in wrist restraints and begin to escort him out of his cell. *Id*. at 2. Plaintiff took two steps toward the holding cell, then suddenly turned and used his head to strike the front of Defendant Howard's head. *Id*.

       It appeared to Defendant Wulf that Plaintiff "used full force" to strike Defendant Howard. *Id*. Defendant Wulf states that Defendant Howard did not say anything in response to the strike. *Id*. Defendants pushed Plaintiff against a nearby wall to attempt to regain control of him, then brought Plaintiff to the ground. *Id*. Plaintiff continued to resist and curled up on his side instead of lying on his stomach. *Id*. Plaintiff was kicking his legs and appeared to be trying to kick Defendant Wulf, and Plaintiff was also spitting toward Defendant Howard. *Id*. Defendant Wulf moved toward Plaintiff's legs and held his crossed ankles with his hands to keep him from kicking. *Id*. at 2-3. Defendant Wulf "called out over the radio that there was a use of force occurring." *Id*. at 3. He estimates that approximately 20-30 seconds elapsed between Plaintiff striking Defendant Howard with his head and Defendant Wulf making the radio call. *Id*. Other officers began to

arrive within about 10 seconds of the call. *Id*. Defendant Wulf claims that he did not use any sort of strike or apply any pressure to Plaintiff's neck during this incident. *Id*.

### F.  Declaration of Crystal Jennings

Sergeant Crystal Jennings was working as a corrections officer in the IMU on December 5, 2021. Dkt. 56 at 1. She heard a call come over the radio that a use of force incident was occurring on the north end of the unit and quickly made her way to that location to assist. *Id*. She arrived within a minute of hearing the radio call and saw Plaintiff "face down on the ground but still resisting," and Defendants on top of Plaintiff. *Id*. at 1-2. Sergeant Jennings and other officers placed ankle restraints on Plaintiff and eventually stood him up and escorted him to a nearby holding cell. *Id*. at 2. Sergeant Jennings asserts that she neither witnessed Defendant use any sort of strike against Plaintiff, nor did she see any officer with a knee on Plaintiff's neck. *Id*. She also states that she does not recall Plaintiff reporting or complaining of any injuries after the incident. *Id*.

### G.  Declaration of Wade Rada

Defendants also submitted a declaration of Officer Wade Rada, who was working as a corrections officer assigned to the control booth in the north wing of the IMU on December 5, 2021. Dkt. 57 at 1. The officer working the control booth is responsible for remotely opening doors at the request of other officers within the facility. *Id*. Officer Rada recalls opening Plaintiff's cell door at Defendants' request, looking away for a few seconds, then hearing one of the officers call out over the radio about a use of force. *Id*. at 2. He turned his attention back to the parties and saw Defendants on the ground with Plaintiff about 100 feet away from the control booth. *Id*. Officer Rada could not see

Defendants' lower bodies from his position but states that he was able to see their upper bodies well. *Id*. He states that he watched the incident for the next 20 to 30 seconds and did not see either Defendant punch or use any sort of strike against Plaintiff. *Id*. He then turned his attention away to operate the doors for other officers responding to the radio call. *Id*.

H. Declaration of Patrick McPherson

Sergeant Patrick McPherson was working December 5, 2021, as the day shift supervisor in the IMU. Dkt. 58 at 1. He was in the south control booth when he heard a radio call about a use of force in the north wing. *Id*. After hearing the call, Sergeant McPherson went to his office 30 to 40 feet away, grabbed a hand-held camera, and then proceeded to the location of the incident, which was about 100 feet from his office. *Id*.

He was able to see Defendants' bodies as he was approaching the scene through glass windows in a series of doors. *Id*. at 2. McPherson states that he observed Defendants on top of Plaintiff, who appeared to be resisting, although Plaintiff appeared to have stopped resisting by the time Sergeant McPherson arrived. *Id*. Sergeant McPherson estimates that it took him about 45 seconds to get from his office "to a vantage point at which I could see the officers involved" in the incident. *Id*. When he arrived, another officer was placing ankle restraints on Plaintiff. *Id*. The officers then brought Plaintiff to his feet and walked him to a holding cell. *Id*. McPherson states that he asked Plaintiff if he wanted to make a statement about what happened during the incident, and Plaintiff "showed [him] both middle fingers in response." *Id*. Sergeant McPherson states that he did not see any officer punch or strike Plaintiff or place their

knee on Plaintiff's neck or head throughout the portion of the incident that he witnessed. *Id*.

     I.   <u>Declaration of Darian Vincent</u>

     Darian Vincent was working as a corrections officer in the south wing of the IMU on December 5, 2021. Dkt. 59 at 1. That day, he heard a radio call about a use of force in the north wing, roughly 50 yards away. *Id*. He immediately moved toward that location and saw Defendants on top of Plaintiff about 30 seconds after the call. *Id*. at 1-2. Officer Vincent saw that Defendants did not have ankle restraints and went to retrieve the restraints from the nearby control booth, which took him about 10 seconds. *Id*. He applied the ankle restraints to Plaintiff's legs and then assisted the other officers in escorting Plaintiff to a holding cell. *Id*. at 2. Officer Vincent avers that he did not see any officer punch or strike Plaintiff during this incident, nor did he see any officer with his knee on Plaintiff's neck. *Id*. He also states that he did not hear Plaintiff complain of any injuries or see any injuries to Plaintiff's face. *Id*.

DISCUSSION

A.   <u>Summary Judgment Standard</u>

     Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving

party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, an adverse party may not rest upon the mere allegations or denials of the pleadings; the non-moving party's response, by affidavits or as otherwise provided by Federal Rule of Civil Procedure 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The nonmoving party is required to present specific facts and cannot rely on conclusory allegations. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993). However, the Court may not disregard evidence solely based on its self-serving nature, even if it is uncorroborated. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497-98 (9th Cir. 2015).

A genuine dispute concerning a material fact exists when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A mere scintilla of evidence is insufficient to create a factual dispute. *Anderson*, 477 U.S. at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their]

favor." *Anderson*, 477 U.S. at 255. The Court may not weigh evidence or decide

credibility. *Id*. Rather, the Court must determine whether the specific facts that are

presented by the non-moving party, considered along with undisputed context and

background facts, would show that a rational or reasonable jury might return a verdict in

the non-moving party's favor based on that evidence. *Emeldi v. Univ. of Or.,* 698 F.3d

715, 728-29 (9th Cir. 2012).

B.      Section 1983 Standard

        To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

conduct complained of was committed by a person acting under color of state law, and

(b) the conduct deprived a person of a right, privilege, or immunity secured by the

Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

(1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Section

1983 is the appropriate avenue to remedy an alleged wrong only if both elements are

present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). The causation

requirement of Section 1983 is satisfied only if a plaintiff demonstrates that a defendant

did an affirmative act, participated in another's affirmative act, or omitted to perform an

act which he was legally required to do that caused the deprivation complained of. *Leer

v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740,

743-44 (9th Cir. 1978)).

C.      Defendants' Motions to Strike

        As a preliminary matter, Defendants seek to strike certain portions of Plaintiff's

filings in response to their motion for summary judgment. Dkt. 65. They contend that five

1   specific paragraphs in Dkt. 60, as well as the entirety of Dkt. 61, lack proper foundation,

2   constitute speculation, or are irrelevant to the current proceeding. Dkt. 65, at 1-4.

3        A court may consider only admissible evidence in ruling on a motion for summary

4   judgment. *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002); *see also*

5   Fed. R. Civ. P. 56(c). Objections to evidence because the evidence is irrelevant,

6   speculative, argumentative, vague and ambiguous, or constitutes an improper legal

7   conclusion are duplicative of the summary judgment standard itself.  *See Burch v.*

8   *Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).  Summary

9   judgment can only be awarded when there is no genuine dispute of *material* fact.  *See*

10  Fed. R. Civ. P. 56.  "The Court cannot rely on irrelevant facts, and thus relevance

11  objections are redundant."  *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118,

12  1128 (D. Idaho 2012). Accordingly, the Court declines to strike the challenged portions

13  of Plaintiff's response opposing summary judgment (Dkts. 60, 61) but will only consider

14  statements in those materials that meet the requirements of Rule 56.

15       Defendants also seek to strike Plaintiff's filing at Dkt. 71, arguing that it is an

16  unauthorized surreply in violation of Local Civil Rule (LCR) 7(g), as well as irrelevant

17  and untimely. Dkt. 72. A party opposing a motion may file a response, to which the

18  moving party may file a reply. Local Rules W.D. Wash. LCR 7(g). The Rule permits the

19  non-moving party to file a surreply for the specific purpose of requesting that the Court

20  strike material contained in or attached to a reply brief. *Id.* The Rule requires the party to

21  "file a notice of intent to file a surreply as soon after receiving the reply brief as

22  practicable." *Id.* It also specifies that the surreply "shall be strictly limited to addressing

23

24

25

REPORT AND RECOMMENDATION - 15

the request to strike. Extraneous argument or a surreply filed for any other reason will not be considered." *Id.*

Plaintiff did not submit a notice of intent as required by LCR 7(g) or otherwise receive leave from the Court to file a surreply opposing summary judgment. Plaintiff's filing at Dkt. 71 appears to contain additional evidence and argument in opposition to summary judgment rather than a request to strike. Accordingly, the filing does not comply with LCR 7(g), and the Court recommends that Defendants' motion to strike (Dkt. 72) be GRANTED and that Dkt. 71 be STRICKEN.

D.    Eighth Amendment Legal Standard

The "'unnecessary and wanton infliction of pain'" on an inmate constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664 (1977)). When courts analyze an Eighth Amendment claim of excessive force, the core inquiry is whether the force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Accordingly, "subjective intent is critical in an Eighth Amendment analysis." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 797 (9th Cir. 2018).

In determining whether force is excessive, the court evaluates whether the defendants had a subjectively wanton state of mind when they engaged in the use of force, considering factors such as the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. The extent of the injury suffered by the plaintiff is a relevant but

1    not dispositive consideration. *Hudson*, 503 U.S. at 7.  While the Eighth Amendment

2    does not reach *de minimis* uses of physical force, a claim is not foreclosed merely

3    because the resulting injury was only minimal.  *Hudson*, 503 U.S. at 9-10; *Wilkins v.*

4    *Gaddy*, 599 U.S. 34, 38-39 (2010). At the same time, courts must be cognizant of prison

5    officials' responsibility to ensure the safety of prison staff and inmates, and use of force

6    in this context "does not amount to cruel and unusual punishment simply because it

7    may appear in retrospect that the degree of force authorized or applied for security

8    purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475

9    at 319.

10    Here, there is no dispute that Defendants used force in response to Plaintiff

11    striking Defendant Howard with his head while Defendants were escorting Plaintiff from

12    his cell. There is a dispute about the extent of the force that was used.

13    The Court is required to "consider as evidence in his opposition to summary

14    judgment all of [a *pro se* plaintiff's] contentions offered in motions and pleadings, where

15    such contentions are based on personal knowledge and set forth facts that would be

16    admissible in evidence, and where [plaintiff] attested under penalty of perjury that the

17    contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d

18    918, 923 (9th Cir. 2004). If a *pro se* litigant swears that a statement made in a motion,

19    complaint, or other pleading is "true and correct" and is based on personal knowledge,

20    then it "functions as an affidavit." *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th

21    Cir. 1998).

22    Plaintiff did not submit his complaint under penalty of perjury or otherwise verify

23    his assertions as true and correct, so the Court cannot consider the complaint as a

24

25

1    declaration or affidavit. Likewise, Plaintiff's responses opposing summary judgment did

2    not contain any verification. But Plaintiff's deposition transcript excerpts are part of the

3    record, and the deposition testimony was sworn under penalty of perjury. Dkt. 53, Ex. A.

4         This testimony includes specific facts detailing Plaintiff's account of the

5    altercation with Defendants that contradict Defendants' version of events. Defendant

6    Wulf claims that he did not any pressure to Plaintiff's neck during this incident. Dkt. 54

7    at 3. Defendant Howard avers that he did not punch or strike Plaintiff at any point during

8    this incident. Dkt. 55 at 3. Defendant Howard also states that he did not jump back or

9    yell anything at Plaintiff after he was head-butted. Dkt. 55 at 3. Plaintiff's testimony

10   directly contradicts each of these statements. *See* Dkt. 53, Ex. A at 16-21.

11        Defendants argue repeatedly that the Court should not credit Plaintiff's

12   statements because they are internally inconsistent or contradicted by the declarations

13   of Defendants and other corrections officers. The Court does not weigh evidence or

14   engage in credibility determinations at this stage and "'must assume the truth of the

15   evidence set forth by the nonmoving party'" when it conflicts with the moving party's

16   evidence as to a material fact. *Manley v. Rowley*, 847 F.3d 705, 710-11 (9th Cir. 2017)

17   (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013)).

18        Defendants argue that it is "undisputed" that their use of force against Plaintiff

19   "ended the moment his resistance to their efforts to control him ended." Dkt. 65 at 5-6.

20   But Plaintiff testified  in the deposition that Defendant Howard continued to punch him

21   and that Defendant Wulf knelt on his neck after he had stopped "attempting to assault"

22   Defendant Howard. Dkt. 53, Ex. A at 16-19, 22-24, 34-35. A reasonable jury could find

23

24

25

that multiple blows to the head and restricting an inmate's airflow by kneeling on his

neck after he had stopped resisting constitute excessive and wanton infliction of pain.

Defendants also argue that there is no genuine dispute of material fact that they

used force strictly to defend against Plaintiff's attack on Defendant Howard and restore

order. Dkt. 52 at 12. But, again, viewing the facts in the light most favorable to Plaintiff,

Plaintiff's testimony indicates a pattern of harassment by Defendants. A reasonable jury

could conclude that the force as described by Plaintiff in conjunction with taunting

remarks made to a suicidal inmate could suggest that the use of force by both

defendants constituted retaliation or punishment with malicious intent rather than a

good-faith effort to restore discipline.

There is a genuine dispute of material fact as to whether Defendants' actions in

response to Plaintiff's assault on Defendant Howard were a good-faith effort to restore

discipline or a malicious and sadistic effort to cause harm. Consequently, the

undersigned recommends that summary judgment be DENIED.

E.    Qualified Immunity

A government official is entitled to qualified immunity from a suit for damages

under Section 1983 unless "(1) they violated a federal statutory or constitutional right,

and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District

of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566

U.S. 658, 664 (2012)). A right is "clearly established" when existing precedent places

the "statutory or constitutional question beyond debate" such that every reasonable

officer would understand that their conduct violated that right. *Reichle*, 566 U.S. at

664. "The rule must be 'settled law,' which means it is dictated by 'controlling authority'

1 or 'a robust consensus of cases of persuasive authority.'" *Wesby*, 138 S. Ct. at 589-90

2 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); *Ashcroft v. al–Kidd*,

3 563 U.S. 731, 741-42 (2011)) (internal citations and quotation marks omitted). The

4 Supreme Court has repeatedly directed courts "not to define clearly established law at a

5 high level of generality." *al–Kidd*, 563 U.S. at 742. Although a case need not be directly

6 on point, "existing precedent must have placed the statutory or constitutional question

7 beyond debate." *Id*. at 741. "In some circumstances, 'a general constitutional rule

8 already identified in the decisional law may apply with obvious clarity to the specific

9 conduct in question, even though the very action in question has [not] previously been

10 held unlawful.'" *Bonivert v. City of Clarkston,* 883 F.3d 865, 872-73 (9th Cir. 2018)

11 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)) (internal quotation marks

12 omitted).

13   When reviewing qualified immunity in the context of a defense motion for

14 summary judgment, the evidence must be considered in the light most favorable to the

15 plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

16 curiam). If there is a genuine issue of material fact concerning both: (1) whether the

17 defendant's conduct violated a constitutional right, and (2) whether it would be clear to a

18 reasonable officer that their conduct was unlawful under the circumstances they

19 confronted, then granting summary judgment based on qualified immunity is not

20 appropriate. *Bonivert,* 883 F.3d at 871-72.

21   "The plaintiff 'bears the burden of showing 'that the rights allegedly violated were

22 clearly established.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021)

23 (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)).

24

25

However, courts should draw on their "'full knowledge' of relevant precedent'" when considering the legal question of whether a right is clearly established. *Id*.

Defendants' argument assumes that the facts alleged by Plaintiff, if proven, would show a violation of his constitutional rights. Dkt. 52 at 14-15. The Court will also assume that Plaintiff has satisfied the first prong of the qualified immunity analysis. Defendants contend that, even if Plaintiff has shown genuine disputes of material fact that would preclude summary judgment on his excessive force claim, they are nonetheless entitled to qualified immunity because and neither Defendant's conduct was clearly unlawful.

Plaintiff admits that he assaulted Defendant Howard but argues that Defendants' use of force in responding to this assault was excessive and malicious. Although Plaintiff's testimony on the chronology of Defendant Howard's punches in relation to his own actions is not entirely clear, he claims that Defendant Howard continued to punch him after he had stopped resisting or attempting to assault him. Plaintiff also claims that Defendant Wulf knelt on his neck after he had stopped resisting or attempting to assault Defendant Howard. It is undisputed that Plaintiff was handcuffed throughout the incident.

The law is clearly established that the Eighth Amendment prohibits a prison official from using force against an inmate when the force is applied maliciously and sadistically to cause harm. *See Whitley v. Albers*, 475 U.S. 312, 320-21; *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022). Further, "it is clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes*, 31 F.4th at 1223 (citing *Hudson,* 503 U.S. at 4).

The core issue for Plaintiff's excessive force claim is a factual determination of the extent of force that was used and whether that force was malicious and excessive given the circumstances. Therefore, on the facts currently in the record for summary judgment, a determination on qualified immunity is not appropriate. Because the facts relevant to the issue of qualified immunity are intertwined with the disputed facts relevant to the issue of excessive force under the Eighth Amendment, Defendants are not entitled to summary adjudication on the issue of qualified immunity.

F.    Appointment of Counsel

This matter previously came before the Court on Plaintiff's motion for appointment of counsel. Dkt. 15. This Court denied that motion under the circumstances that existed on April 28, 2022, before the summary judgment stage. Dkt. 26. Having carefully considered Defendants' motion for summary judgment and the parties' evidence, the undersigned recommends that the Court reconsider Plaintiff's request for counsel and grant it under the present circumstances of this case.

There is no constitutional right to appointed counsel in a § 1983 action. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). A district court may appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1)). *Rand v. Roland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd en banc on other grounds,* 154 F.3d 952 (9th Cir. 1998). The decision to request *pro bono* counsel rests within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). To decide whether exceptional circumstances exist, the Court must evaluate "both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues

involved.'" *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Neither of these factors is dispositive, and both must be considered together before reaching a decision regarding appointment of counsel. *Wilborn*, 789 F.2d at 1331. A plaintiff must plead facts that show he has an insufficient grasp of his case or the legal issues involved, and an inadequate ability to articulate the factual basis of his claim. *Agyeman*, 390 F.3d at 1103. Although a *pro se* litigant may be better served with the assistance of counsel, this is not the test. *Rand*, 113 F.3d at 1525.

On the Defendants' motion for summary judgment, the undersigned recommends a finding that Plaintiff raised a triable issue of fact as to whether Defendants' use of force against him was a good-faith effort to restore discipline or a malicious and sadistic attempt to cause harm. For the reasons set forth in this Report and Recommendation, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits of his Section 1983 claim that justifies appointment of counsel.

Plaintiff's application to proceed *in forma pauperis* demonstrates that he is unable to afford counsel. *See* Dkt. 3; 28 U.S.C. § 1915(e)(1). Plaintiff has also pleaded facts showing that he has an inadequate ability to articulate his legal claims and develop the factual bases of his claims moving forward. He stated that he has "only [a] 10th grade education" and limited access to legal materials. Dkt. 19. Further, Plaintiff's response to Defendants' motion for summary judgment shows that he does not have a sufficient grasp of the legal issues involved in this case. Although the excessive force claims against the two Defendants are relatively straightforward, Plaintiff's filings focus on justifying his assault on Defendant Howard rather than supporting his claims that

Defendants used excessive force in response to the assault. The case will require him

to prove Defendants' subjectively wanton state of mind: that they employed force

against him maliciously and sadistically for the purpose of causing harm. *Rodriguez*,

891 F.3d at 797. Plaintiff did not submit any affidavits or relevant evidence to oppose

summary judgment, and his only sworn statement in the record is his declaration, which

was submitted by Defendants. For these reasons, the undersigned recommends a

finding that Plaintiff is unable "to articulate his claims *pro se* in light of the complexity of

the legal issues involved." *Wilborn*, 789 F.2d at 1331.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court

GRANT Defendants' motion to strike (Dkt. 65), STRIKE Plaintiff's unauthorized surreply

(Dkt. 71), DENY Defendants' motion for summary judgment (Dkt. 52), and reconsider

and GRANT Plaintiff's motion for appointment of counsel (Dkt. 15).

## OBJECTIONS

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on June 2, 2023, as noted in the caption.

Dated this 16th day of May, 2023.

Theresa L. Fricke
United States Magistrate Judge