UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACOB ANDREW JOHNSTON,

Plaintiff,

v.

WAYLON HOWARD; and ERIC WULF,

Defendants.

CASE NO. 3:22-cv-05089-TL-TLF

ORDER ON REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation of the Honorable Theresa L. Fricke, United States Magistrate Judge (Dkt. No. 48) ("R&R"), and the objections to the R&R of Defendants Howard and Wulf  (Dkt. No. 78). Having reviewed the R&R, Defendants' objections, and the remaining record, the Court ADOPTS in part and REJECTS in part the R&R, DENIES in part and GRANTS in part Defendants' motions to strike (Dkt. Nos. 65 and 72, respectively), and GRANTS Defendants' motion for summary judgment (Dkt. No. 53).

1

## I.   BACKGROUND

2

Plaintiff is an incarcerated individual who sues two corrections officers for allegations of

3

excessive force that occurred on December 5, 2021, while he was housed in the Intensive

4

Management Unit ("IMU") at the Washington Corrections Center. *See* Dkt. No. 5.[1] Mr. Johnston

5

bases his lawsuit on Defendant Corrections Officer ("CO") Howard punching him (*id.* at 32:17–

6

24) and Defendant CO Wulf placing his knee on Mr. Johnston's neck (*id.* at 32:12–16).[2] The

7

R&R lays out the undisputed facts as well as the facts as asserted by Mr. Johnston, CO Howard

8

and CO Wulf, and four other COs who responded to the incident. Dkt. No. 76 at 3–12. The Court

9

will not repeat these facts here.[3]

10

As of the day of the incident, Mr. Johnston had been at IMU for a year and a half to two

11

years, during which time he alleges that he was not fed on a regular basis. Dkt. No. 53 at 13:11–

12

13. This appears to have been a reaction by staff to Mr. Johnston because (as he admits) he was

13

disrespectful to them. *Id.* at 13:9–13. Mr. Johnston filed grievances—including emergency

14

grievances—and requested a transfer, but nothing happened. *Id.* at 13:18–20, 14:14–15.

15

According to Mr. Johnston, he had not eaten for thirty hours that day. *Id.* at 14:1–4. The

16

parties dispute whether Mr. Johnston went to the yellow line on which an incarcerated person has

17

to stand to be fed. *Compare id.* at 19:6–8 with Dkt. No. 50 ¶¶ 4, 6. Mr. Johnston alleges that CO

18

Howard taunted him about not being fed. Dkt. No. 53 at 18:15–20.

19

20

---

[1] *See* Dkt. No. 29 (order identifying the operative complaint); *see also* Dkt. No. 52 at 2.

21

[2] Citations to page numbers are generally to the page number generated by the ECF docket, but citations to transcript pages are to the actual page and line of the deposition transcript.

22

[3] The Court relies on Mr. Johnston's deposition testimony because it is the only evidence to which he attested under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (noting a court must consider as evidence

23

on summary judgment "contentions . . . based on personal knowledge [that] set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). In addition, the Court focuses on Mr. Johnston's testimony because even accepting as true solely

24

his version of events, the Court finds summary judgment is appropriate for the reasons discussed in Section III.B.

Later that day, Mr. Johnston was being moved to the observation unit by CO Howard and CO Wulf. *Id.* at 22:10–13. Mr. Johnston allowed wrist restraints to be placed on him. Dkt. Nos. 54 ¶ 6, 55 ¶¶ 8–9. When they pulled Mr. Johnston out of his cell, he "flipped out" and head butted CO Howard. Dkt. No. 53 at 20:21, 23:19–21. Mr. Johnston then asserts that CO punched him approximately five to ten times while he was still standing. *Id.* at 25:1–5. Mr. Johnston asserts he then began to push CO Howard, and CO Howard continued to punch him until Mr. Johnston fell on his back. *Id.* at 50:1–7. As to whether CO Howard punched him after he was on the ground, Mr. Johnston said, "I'm not quite sure. That's something I need evidence for . . . it might have been on the ground, so that's a 50/50 percent chance." *Id.* at 30:1–5. When Mr. Johnston was lying on the ground on his back, CO Wulf put his knee on Mr. Johnston's neck. *Id.* at 27:5–18. Mr. Johnston is unsure how long CO Wulf had his knee on Mr. Johnston's neck but estimates that it was for approximately fifteen to thirty seconds. *Id.* at 27:20–28:2. When they let him go, Mr. Johnston spat, and a spit mask was placed on his head. *Id.* at 24:12–13. Approximately thirty to forty-five seconds passed between the time Mr. Johnston head butted CO Howard and other officers arrived on the scene. *Id.* at 29:1–8. Mr. Johnston was unsure whether CO Wulf was still applying his knee on Mr. Johnston's neck when the other officers arrived. *Id.* at 29:10–17.

CO Howard also asserts that after being head butted, he used his forearm to push Mr. Johnston's head up against the wall but never punched or struck Mr. Johnston during the incident. Dkt. No. 50 ¶¶ 12–13, 22. CO Wulf asserts he never applied any pressure to Mr. Johnston's neck during the incident. Dkt. No. 54 ¶ 21. Both CO Howard and CO Wulf assert that Mr. Johnston resisted while they tried to bring him to the ground as well as after he was on the ground. *Id.* ¶¶ 12–13; Dkt. No. 55 ¶¶ 14, 19. CO Howard estimates approximately one minute passed between the time of the head butt and other officers arriving. *Id.* ¶ 21. CO Wulf

estimates he made the call for other officers approximately twenty to thirty seconds after the head butt, and officers arrived within about ten seconds of the call. Dkt. No. 54 ¶¶ 16–17. Four other corrections officers submitted declarations, but none of them saw the incident before hearing CO Wulf's call. *See* Dkt. Nos. 56–59. When they arrived, none of the officers saw CO Wulf with a knee on Mr. Johnston's neck.[4] Dkt. Nos. 56 ¶ 8, 58 ¶ 11, 59 ¶ 9.

## II.   LEGAL STANDARD

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2). Plaintiff did not file any objections to the R&R. Defendants filed timely objections to the R&R. Dkt. No. 78.

## III.   DISCUSSION

As a preliminary matter, the Court will address Defendants' motions to strike. First, as part of their reply, Defendants moved to strike portions of Plaintiff's response opposing summary judgment (*i.e.*, Dkt. Nos. 60-1 and 61). Dkt. No. 65 at 1–4. Judge Fricke declined to strike the challenged portions of Plaintiff's response but only considered statements in the

---

[4] One officer could not see the lower bodies of Mr. Johnston, CO Howard, or CO Wulf. Dkt. No. 57 ¶ 5.

materials that met the requirements of Rule 56. Dkt. No. 76 at 15. Second, Defendants moved to strike Plaintiff's supplemental response (Dkt. No. 71) as an unauthorized surreply in violation of Local Civil Rule 7(g). Dkt. No. 72. Judge Fricke granted the motion to strike as to Plaintiff's supplemental filing. Dkt. No. 76 at 15–16. No Party objected to Judge Fricke's recommendations with regard to the motions to strike, and the Court agrees with Judge Fricke's rationale and findings on these motions. Therefore, the Court ADOPTS the Report and Recommendation in relevant part, DENIES Defendants' motion to strike at Dkt. No. 65, and GRANTS Defendants motion to strike at Dkt. No. 72.

As for the summary judgment motion itself, Defendants contend that Judge Fricke erred by: (1) finding that there was a genuine dispute of a material fact as to whether Mr. Johnston's claims amount to a constitutional violation; (2) failing to adequately consider the factors relevant to determining whether Mr. Johnston's constitutional rights were violated; (3) incorrectly characterizing the right at issue and misapplying the qualified immunity standard; and (4) failing to address Defendants' motion regarding emotional damages. For the reasons discussed below, the Court finds that both Defendants are entitled to qualified immunity and, therefore, does not need to reach the objections regarding the constitutional violations or emotional damages.

## A.    The Qualified Immunity Standard

A government official is entitled to qualified immunity from a claim for damages unless the plaintiff raises a genuine issue of fact showing (1) "a violation of a constitutional right" and (2) that the right was "clearly established at the time of [the] defendant's alleged misconduct." *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Even if there is a genuine question of material fact as to whether a plaintiff's constitutional rights were violated, the plaintiff must still establish that the unlawfulness of the defendant's conduct was clearly established. *Id.* To defeat the defense of qualified immunity, the

1   plaintiff bears the burden of proving that "the [officers'] specific conduct violated clearly

2   established federal law" by "point[ing] to prior case law that articulates a constitutional rule

3   specific enough to alert these officers in this case that their particular conduct was unlawful."

4   *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Sharp v. Cnty. of Orange*,

5   871 F.3d 901, 911 (9th Cir. 2017)). The clearly established law should not be defined "at a high

6   level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563

7   U.S. 731, 742 (2011)). It must be defined "on the basis of the 'specific context of the case.'"

8   *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Tolan v. Cotton*, 572

9   U.S. 650, 657 (2014)).

10        These two prongs of the qualified immunity analysis may be addressed in either order.

11   *Evans*, 997 F.3d at 1064. This avoids "a substantial expenditure of scarce judicial resources on

12   difficult questions that have no effect on the outcome of the case." *Pearson*, 555 U.S. at 236–37.

13   Given the facts of this case, the Court finds it appropriate to address the second prong first.

14  **B.    Application of Qualified Immunity Standard**

15        On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed,

16   and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477

17   U.S. 242, 255 (1986). The court does not make credibility determinations or weigh evidence at

18   this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). Therefore, the

19   Court accepts Mr. Johnston's testimony that: he was not fed regularly; he had not eaten in thirty

20   hours as of the day of the incident; he was taunted by CO Howard about not being fed that very

21   morning, which prompted him to head butt CO Howard; CO Howard then punched him several

22   times; and CO Wulf knelt on Mr. Johnston during the altercation. Even accepting these facts, the

23   undisputed fact that Mr. Johnston head butted CO Howard after he was placed in wrist restraints

24   (*see supra* Section I) dooms his case.

Defendants assert that Judge Fricke erred by finding that Mr. Johnston sufficiently raised a question of fact as to whether the officers violated a clearly established right because he was handcuffed during the incident. Dkt. No. 78 at 7. They also assert that Judge Fricke's "black-and-white formulation of the right at issue precludes adequate consideration of the full context of the use of force in question." *Id.* at 8. The Court agrees with Defendants on both points.

Judge Fricke relies on *Hughes* for the proposition that "it is clearly established law that beating a handcuffed convict violates the Eighth Amendment." Dkt. No. 76 at 21 (quoting *Hughes,* 31 F.4th at 122).[5] However, the sentence immediately following the quoted sentence in *Hughes* points out that "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee *who has fully surrendered and is completely under control*." 31 F.4th at 1223 (emphasis added) (quoting *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)). In *Hughes,* like in *Mendoza*, officers continued to punch the plaintiff, and the police dog was allowed to continue to bite him, after he was "fully subdued, with his hands handcuffed behind his back."[6] 31 F.4th at 1222. In other words, there was no indication of any resistance whatsoever by the plaintiffs at the time physical force was used against them.

By contrast in this case, Mr. Johnston admitted head butting CO Howard *after* being placed in wrist restraints. The situation here lays out why the fact of a plaintiff being handcuffed alone cannot defeat qualified immunity: a handcuffed person can still resist (or even attack) an

---

[5] *Hughes* relied on *Hudson*, in which the only issue was whether the use of excessive physical force against an incarcerated person who does not suffer serious injury constitutes cruel and unusual punishment. 504 U.S. at 4. But *Hudson* in no way addresses or discusses the use of force on a restrained person.

[6] While the officer insisted he punched the plaintiff before he was handcuffed, these were the facts as accepted for purposes of the summary judgment motion in the case. 31 F.4th at 1222.

officer by head butting them (as Mr. Johnston did here), biting them, or kicking them, to name just a few possibilities.

Mr. Johnston has not pointed to, and the Court has not found,[7] any case decided as of December 2021 that would establish that a corrections officer punching an incarcerated person several times in response to the incarcerated person assaulting the officer (even if the person is handcuffed) constitutes a violation of a clearly established right "beyond debate."[8] *See al-Kidd*, 563 U.S. at 741. Nor has Mr. Johnston pointed to, or the Court found, any case that establishes that a corrections officer kneeling for fifteen to thirty seconds on an incarcerated person within seconds of an assault on another officer constitutes a violation of a clearly established right.[9] As

---

[7] Resolving whether an asserted federal right was clearly established presents a pure question of law, so a court must "draw on [its] 'full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

[8] The Court does not consider Mr. Johnston's allegation that he was struck after he was on the ground because he admits that there was a "50/50 percent chance" he was punched when on the ground. Dkt. No. 53 at 29:22–30:5. The standard of proof at trial is a preponderance of the evidence standard, which requires credible evidence establishing by something greater than a 50 percent chance that Plaintiff's claims are true. *See, e.g.*, *Voigt v. U.S. ex rel. U.S. Forest Serv.*, No. C10- 1529, 2012 WL 2150331, at *4 (D. Or. June 11, 2012) (making finding based on "more than fifty percent" preponderance standard).Therefore, he would likely not be able to establish that he was hit while on the ground even if the jury accepted his testimony on this point.

[9] The Court acknowledges the dangers of restraining a person by placing a knee on the person's neck or back while on one's stomach, especially after the death of George Floyd. However, the four cases of which the Court is aware that address the issue of chokeholds in this circuit as of the date of this incident are very different than the instant case. *See Valenzuela v. City of Anaheim*, No. 20-55372, 2021 WL 3362847, at *1–2 (9th Cir. Aug. 3, 2021) (no qualified immunity for officers who were trained not to apply the carotid hold for longer than 30 seconds or attempt the hold more than twice within 24 hours but kept the plaintiff in multiple, extended chokeholds for a 10-minute period even as he gagged, wheezed, turned purple, and screamed that he could not breathe); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (no qualified immunity for officer who placed plaintiff in a lateral vascular neck restraint, which restricts the flow of blood to the brain rather than restricting air flow, long enough to render him unconscious while five officers fully restrained plaintiff); *Barnard v. Las Vegas Metro. Police Dep't*, 310 F. App'x 990, 993 (9th Cir. 2009) (no qualified immunity where police officer used a chokehold on a non-resisting arrestee who had surrendered, pepper-sprayed him, and applied such knee pressure on his neck and back that it caused the collapse of five vertebrae in his cervical spine); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1054–55, 1062 (9th Cir. 2003) (finding violation of clearly established law in kneeling on the back and neck of a prone and compliant detainee and pressing the weight of two officers' bodies on him even after he complained that he was choking and in need of air, causing plaintiff to fall into respiratory distress and a permanent vegetative state).

such, the Court has no choice but to grant Defendant's motion and find that CO Howard and CO Wulf are protected from liability by qualified immunity.

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1)    the Court ADOPTS in part and REJECTS in part the Report and Recommendation.

(2)    Defendants' motion to strike (Dkt. No. 65) is DENIED.

(3)    Defendants' motion to strike (Dkt. No. 72) is GRANTED.

(4)    Defendants' motion for summary judgment (Dkt. No. 52) is GRANTED on the issue of qualified immunity to both Defendants, and, therefore, the Court also must DISMISS the case.

(5)    Plaintiff's motion for appointment of counsel (Dkt. No. 15) is DENIED as moot.

Dated this 6th day of October 2023.

Tana Lin
United States District Judge